UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

|  | Case No. 22-20716-dob |
| ELIZABETH PEREZ, | Chapter 13 Proceeding |
| Debtor. | Hon. Daniel S. Opperman |

_____/

## OPINION PARTIALLY GRANTING MOTION TO COMPEL COMPLIANCE WITH TITLE 11 OF THE UNITED STATES CODE, DISGORGE OVERPAYMENT OF FUNDS, AWARD DAMAGES, AND COMPEL COMPLIANCE WITH MICHIGAN RULES OF PROFESSIONAL RESPONSIBILITY

### Introduction

The bankruptcy process requires parties and counsel to communicate with each other and to act timely. In this case, the Debtor and her counsel and a creditor, Saginaw Shiawassee Habitat for Humanity ("Habitat for Humanity"), and its counsel did not do so. As a result, the Debtor risked losing her home and the benefit of having $25,000.00 paid to Habitat for Humanity to cure the arrearages on her mortgage. Fortunately, these dangers were averted, but the Court has now been asked to sort out the responsibilities of each party and assess attorney fees. For the reasons stated in this Opinion, the Court awards the Debtor $720.00 against Habitat for Humanity.

### Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334, 157(a), and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (B) (allowance or disallowance of claims against the estate).

1

<u>Findings of Fact</u>

The Court held an evidentiary hearing on August 1, 2023 and heard the testimony of Carmen Mora, the CEO of Habitat for Humanity. The parties requested that the Court consider various pleadings filed in this case, as well as the proofs of claim filed for and by Habitat for Humanity, as amended. After careful consideration of the testimony of Ms. Mora and review of the pleadings as requested by counsel, the Court issues this Opinion.

Ms. Perez lives at 1776 Prospect Street, Saginaw, Michigan and executed a mortgage naming Habitat for Humanity as a mortgagee in exchange for $67,015.00 that she used to purchase her home. The Habitat for Humanity mortgage and residential mortgage note, attached to the amended proof of claim of Habitat for Humanity, required Ms. Perez to pay $223.38 as a monthly payment, with an escrow payment of $177.62. So long as Ms. Perez remained current, the interest rate on the obligation was 0%, but if she missed a payment then the interest rate increased, per the note and Michigan law, to 10%. As Ms. Mora testified, Ms. Perez often missed payments and Habitat for Humanity decided to foreclose its mortgage. Previously, Ms. Perez filed a Chapter 13 petition with this Court in 2017 prior to the mortgage foreclosure action by Habitat for Humanity. Her most recent case was dismissed in March 2021 and Habitat for Humanity decided to foreclose its mortgage again. In response, Ms. Perez filed the instant Chapter 13 petition on July 28, 2022. Her Chapter 13 Plan called for weekly payments of $133.85 and increasing to $213.84 on September 1, 2024. Although the servicer for Habitat for Humanity was identified as the creditor, the Debtor proposed to pay $486.00 per month on her mortgage, with arrears of $28,000.00 to be paid from Michigan Homeowner Assistance Funds ("MIHAF"). Her Chapter 13 Plan was confirmed by the Court on October 7, 2022.

2

Debtor's counsel[1] informed Habitat for Humanity's counsel of the Chapter 13 petition and the foreclosure action was properly stopped. As Debtor's counsel argued on August 1, 2023, counsel for Habitat for Humanity did not appear at the first meeting of creditors or object to the Debtor's Chapter 13 Plan. This would normally be good for the Debtor, but Habitat for Humanity's counsel continued his inaction by failing to file a proof of claim by the October 6, 2022 deadline.

It is this failure that started the chain of events that caused consternation to all. Debtor's counsel rightfully noted the failure of Habitat for Humanity to file a proof of claim and was left in the uncomfortable and awkward position of either filing a protective proof of claim or letting the matter sit. Debtor's counsel did file a proof of claim on January 12, 2023, along with a motion to allow this late filed claim. The Court allowed the filing of the late filed claim by way of an Order dated February 7, 2023, and subsequently granted the Debtor's request to set the balance of that claim at $46,631.63, with an arrearage of $9,681.41, and a monthly payment of $223.38. A day prior to granting this relief, the Debtor filed her first Motion to Compel Compliance with Title 11 of the United States Code, Disgorge Overpayment of Funds, Award Damages, and Compel Compliance with Michigan Rules of Professional Responsibility ("Motion"). The filing of the Motion by the Debtor prompted Habitat for Humanity to retain Mitchell Piper as new counsel. Mr. Piper filed a response to the Motion and began to work with Debtor's counsel to sort out the exact amount owed to Habitat for Humanity and resolve the Motion. This effort was complicated by the award of $25,000.00 by MIHAF for the benefit of Ms. Perez, with conditions. The award of

---

[1] Ironically, neither Ms. Perez's original attorney who filed the majority of the pleadings in this case or Habitat for Humanity's original attorney saw this matter to completion. Neither attorney appeared at the August 1, 2023 hearing, so the Court did not have the benefit of their testimony to explain their actions.

$25,000.00, while normally welcome news to any debtor, has complicated matters further and has raised the ire of Debtor's counsel.

As detailed in the pleadings and testified by Ms. Mora, the State of Michigan received an application from Ms. Perez, as evidenced by the Chapter 13 Plan provisions indicating that any arrearage would be paid by MIHAF. Per the Chapter 13 Plan and Ms. Mora's testimony, Habitat for Humanity was indeed owed more than $25,000.00, but Habitat for Humanity decided to forgive the balance of the arrears and accept the $25,000.00. That acceptance came with a hitch: the Debtor needed to accept the $25,000.00 within five days by executing a document that the MIHAF agency sent to her. Neither Habitat for Humanity or its servicer could force Ms. Perez to do so, but Ms. Mora testified that she informed her then attorney to contact Ms. Perez's attorney to tell her of the tight time constraint. Ms. Mora understood that the Habitat for Humanity attorney did so; Debtor's counsel vehemently denies any such contact.

At any rate, as the days ticked by Ms. Mora saw the impending danger and described that danger to a friend of Ms. Perez. In turn, that friend contacted Ms. Perez and she signed the necessary papers and the servicer for Habitat for Humanity received the $25,000.00. Habitat for Humanity forgave the remaining arrearage, which Ms. Mora testified was between $4,300.00-$4,500.00.[2]

In her Motion, the Debtor claims that this contact was a violation of the automatic stay. The Motion also states that because of the confusion caused by Habitat for Humanity, in particular, its attorney, the Debtor had to incur significant additional legal expenses to file a proof of claim

---

[2] The last amended proof of claim filed by Habitat for Humanity states a much higher amount of $2,029.96 of interest waived on February 6, 2023, $3,574.08 of principal waived on February 7, 2023, and $727.54 of interest waived on March 15, 2023. The Court accepts the $4,300.00 amount testified by Ms. Mora.

4

for Habitat for Humanity, sort out the details, and then ascertain the correct amount owed to Habitat for Humanity. Fortunately for all, Debtor's counsel and Mr. Piper were able to agree on an amended proof of claim that was filed with this Court on June 23, 2023 that recites that the amount owed to Habitat for Humanity is $29,789.00, with a 0% interest rate, and a monthly payment of $223.38 for principal and interest, and a monthly escrow of $311.62. Since the Debtor's Chapter 13 Plan calls for a monthly payment of $580.00 and increasing to $926.66, Ms. Perez, if she makes her payments, will be able to keep her home. As Ms. Mora testified, that is the goal of Habitat for Humanity as well so a happy ending is possible.

The issue that all face now, however, is that Ms. Perez's attorneys incurred significant attorney fees getting to that point. Ms. Perez's attorneys were awarded $3,500.00 when her Chapter 13 Plan was confirmed and the most recent application for attorney fees is in the amount of $9,803.00. After a hearing, the Court entered an Order awarding an additional $2,242.22 because all agreed that those fees were not related to Habitat for Humanity. Ms. Perez's attorney claims that the remaining fees of $7,562.45 are attributable to the actions of Habitat for Humanity. Habitat for Humanity disagrees and it is this issue that is before the Court.

<u>Summary of Position of Parties</u>

Ms. Perez's counsel and counsel for Habitat for Humanity have assisted the Court by detailing the services provided by Ms. Perez's counsel that are in issue and a response by Habitat for Humanity to each service. The contested services and responses are best summarized as follows in a pleading filed by Habitat for Humanity that states the date and details of the legal services rendered with a reply by Habitat for Humanity in numerical order:

5

| 4/7/2023 | CL | CASE ADMINISTRATION | 0.4 at $300.00/hr | $120.00 |

Appointment with client regarding status of mortgage issues and other case questions and concerns; notes to client file.

1.    Debtors routinely have delinquent mortgages, and this is therefore a common case administration issue that is not attributable to Habitat. In this case, Debtor failed to make any mortgage payment for years prior to the current bankruptcy. Habitat, consistent with its mission to provide housing, did not foreclose its mortgage. Therefore, the so-called "mortgage issues" were solely attributable to Debtor. Furthermore, there is no explanation about the "other case question [sic] and concerns" and no way to attribute these to Habitat. There is no basis to assess these fees to Habitat. To the extent they were actual and necessary fees incurred, they should be assessed to Debtor.

| 1/9/2023 | CL | CLAIMS ADMINISTRATION | 0.5 at $300.00/hr | $150.00 |

Receipt and review of correspondence, including mortgage and note, from mortgage creditor's counsel.

2.    This is routine correspondence in a bankruptcy case involving a significantly delinquent mortgage and, therefore, not attributable to any conduct or misconduct of Habitat. There is no basis to assess these fees to Habitat.

| 1/11/2023 | CL | CLAIMS ADMINISTRATION | 1.60 at $300.00/hr | $480.00 |

Drafted Proof of Claim (protective) for mortgage claim including calculation of amounts necessary to complete 410A and compiled all required documents in support.

3.    Debtor chose to draft a protective proof of claim for Habitat's debt. This was not necessary to administer Debtor's estate because Debtor's liability to Habitat would have been discharged at the conclusion of Debtor's case if there was no claim. Moreover, Habitat as a secured mortgage creditor could have proceeded in rem against Debtor's property at the conclusion of the case regardless of whether it filed a proof of claim. There is no basis to assess these fees to Habitat.

| 1/12/2023 | CL | CLAIMS ADMINISTRATION | 0.60 at $300.00/hr | $180.00 |

Drafted Motion to Allow Late Filed Proof of Claim on client's behalf for payment of a claim on client's mortgage.

4.    See Habitat's response set forth in paragraph 3.

| 1/12/2023 | CL | CLAIMS ADMINISTRATION | 0.50 at $300.00/hr | $150.00 |

Drafted Objection to Proof of Claim of Affiliate Mortgage Services, Inc. and all related documents.

5.    See Habitat's response set forth in paragraph 3.

6

| 1/24/2023 | CL | CLAIMS ADMINISTRATION | 0.30 at $300.00/hr | $90.00 |

Telephone conference with creditor's counsel regarding MIHAF, loan mod, Proof of Claim, and related issues; notes to client file.

6. The matters in this entry are routine matters in chapter 13 bankruptcy proceedings. Moreover, any MIHAF funding and/or loan modifications were for the sole benefit of Debtor. This is not attributable to any action or inaction on the part of Habitat. There is no basis to assess these fees to Habitat.

| 1/31/2023 | CL | CLAIMS ADMINISTRATION | 0.20 at $300.00/hr | $60.00 |

Drafted correspondence to creditor's counsel regarding loan modification offer and issues and/or deficiencies of same.

7. See Habitat's response set forth in paragraph 6.

| 2/2/2023 | CL | CLAIMS ADMINISTRATION | 0.20 at $300.00/hr | $60.00 |

Receipt and review of Proof of Claim of Saginaw-Shiawassee Habitat for Humanity; reviewed against protective claim and calculations for same.

8. This is a routine matter in a chapter 13 bankruptcy proceeding. Debtor's counsel would have had to review any proofs of claim submitted in this case. This is not attributable to any action or inaction on the part of Habitat. There is no basis to assess these fees to Habitat.

| 2/2/2023 | CL | CLAIMS ADMINISTRATION | 1.40 at $300.00/hr | $420.00 |

Drafted Objection to Proof of Claim #4 of Habitat for Humanity.

9. Debtor and Habitat appear to have had a bona fide dispute regarding the amount of the claim stemming from the interest calculations, a previous bankruptcy filing, and waived fees. There is no authority for the proposition that a creditor must pay a debtor's attorney fees when a debtor disputes a claim. Debtor has filed bankruptcy several times and her mortgage loan with Habitat only accrues interest when it is in default. These factors make the claim more complex than a routine mortgage claim, but are attributable to Debtor, not Habitat. There is no basis to assess these fees to Habitat.

| 2/7/2023 | CL | CLAIMS ADMINISTRATION | 0.20 at $300.00/hr | $60.00 |

Review PACER and case file; drafted Certificate of Non-Response for Motion to Allow Late Filed Claim.

10. See Habitat's response set forth in paragraph 3.

| 2/7/2023 | CL | CLAIMS ADMINISTRATION | 0.20 at $300.00/hr | $60.00 |

Receipt and review of correspondence from creditor's counsel advising that it has received and applied MIHAF funds without court order; drafted response to same and requested concurrence with motion for turnover.

11.      MIHAF is a *voluntary* program that provides funding assistance to homeowners for delinquent mortgage/housing expenses.  Debtor initiated her own participation in the program.  Moreover, when approved, Habitat agreed to waive thousands of dollars' worth of interests [sic] and fees so that Debtor's mortgage would be current after application of the grant.  Debtor's choice to participate in the MIHAF program amounts to nothing more than a voluntary payment, which does not violate the automatic stay.  *Pertuso v. Ford Motor Credit Co*, 233 F3d 417, 423 (6th Cir. 2000). Finally, Habitat did not prejudice any other creditor by accepting the MIHAF funds because the grant money can only be used to cure housing-related payment deficiencies.  They are not funds that can flow through Debtor's bankruptcy estate to any other creditor.  If anything, Habitat's acceptance of the funds and associated waiver of Debtor's significant delinquencies improved Debtor's position relative to other creditors.  There is no basis to assess these fees to Habitat.

| 2/7/2023 | CL | CLAIMS ADMINISTRATION | 0.10 at $300.00/hr | $30.00 |

Receipt and review of further correspondence from creditor's counsel regarding request for concurrence.

12.      Habitat did not concur because it properly accepted and applied the MIHAF funds.  See paragraph 11.  There is no basis to assess these fees to Habitat.

| 2/8/2023 | BL | CLAIMS ADMINISTRATION | 0.20 at $90.00/hr | $18.00 |

TC with client RE MIHAF status.  Note file.

13.      As set forth above, MIHAF is a voluntary program, which Debtor chose to participate in for her sole benefit.  See Habitat's response set forth in paragraph 11.  There is no basis to assess these fees to Habitat.

| 2/10/2023 | CL | CLAIMS ADMINISTRATION | 0.50 at $300.00/hr | $150.00 |

Telephone conference with client regarding MIHAF funds, circumstances surrounding same and creditor's direct contact with client and personal solicitation of client's consent under false pretenses and untrue statements.  Client to provide documents to counsel for preparation of motion for various relief.

14.      As set forth in Habitat's previous filings, Habitat disputes that it improperly contacted Debtor or sought Debtor's consent for participation in the MIHAF program based on "false pretenses and untrue statements."  Debtor has provided no admissible evidence in support of these allegations.  Habitat has worked diligently to address Debtor's counsel's concerns.  See also Habitat's response set forth in paragraph 11.  There is no basis to assess these fees to Habitat.

| 2/20/2023 | CL | CLAIMS ADMINISTRATION | 0.20 at $300.00/hr | $60.00 |

Review PACER for objections; drafted Certificate of Non-Response to Objection to Proof of Claim #3 (protective claim).

15. See Habitat's response set forth in paragraph 3.

| 2/20/2023 | CL | CLAIMS ADMINISTRATION | 3.90 at $300.00/hr | $1,170.00 |

Drafted Motion to: comply with Title 11 of the United States Code, including 11 USC 362, 11 USC 1327(a) and Order Confirming Plan, disgorge over payment of funds, award damages resulting from Creditor's failure to do so to date, and compel compliance with Michigan Rules of Professional Responsibility, specifically Rules 4.1-4.4 governing transactions with persons other than clients.

16. See Habitat's response set forth in paragraphs 11 and 14. This filing was not necessary to the administration of the estate. Habitat worked diligently to address the concerns in Debtor's Motions, which made serious allegations but provided no admissible evidence. There is no basis to assess these fees to Habitat.

| 2/21/2023 | TT | CLAIMS ADMINISTRATION | 0.10 at $300.00/hr | $30.00 |

Review entered order on poc 3 objection and note file in relation to pending obj 4 and sanctions.

17. See Habitat's response set forth in paragraph 3.

| 2/23/2023 | CL | CLAIMS ADMINISTRATION | 0.50 at $300.00/hr | $150.00 |

Telephone conference with Attorney Michael Hogan regarding pending Motion to Compel, Objection to Proof of Claim #3, Objection to Proof of Claim #4 and factors leading to filing of same and actions that are required to resolve; drafted correspondence to same attaching original Creditor's counsel correspondence exchange with Attorney Lassner of February 7 and loan history provided to Attorney Lassner by original Creditor's counsel; notes to client file.

18. See Habitat's response set forth in paragraph 11. There is no basis to assess these fees to Habitat.

| 02/24/2023 | CL | CLAIMS ADMINISTRATION | 0.40 at $300.00/hr | $120.00 |

Telephone conference with Counsel for Affiliate Servicing regarding issues related to claim of Habitat; notes to client file.

19. See Habitat's response set forth in paragraph 11. Creditor and its servicer worked diligently to address Debtor's concerns. There is no basis to assess these fees to Habitat.

| 2/24/2023 | CL | CLAIMS ADMINISTRATION | 0.50 at $300.00/hr | $150.00 |

Telephone conference with Attorney Mitchell Piper, counsel for Habitat; discussed status of various filings, background/history of actions to date, and potential plan of action; notes to client file.

20.     See Habitat's response set forth in paragraphs 11, 14, and 16. Creditor and its servicer worked diligently to address Debtor's concerns. There is no basis to assess these fees to Habitat.

| | | | | |
|---|---|---|---|---|
| 2/28/2023 | CL | CLAIMS ADMINISTRATION | 0.10 at $300.00/hr | $30.00 |

Receipt and review of correspondence from Attorney Floyd Kloc regarding Motion to Compel and replacement counsel for creditor.

21.     See Habitat's response set forth in paragraphs 11, 14, and 16. Creditor and its servicer worked diligently to address Debtor's concerns. There is no basis to assess these fees to Habitat.

| | | | | |
|---|---|---|---|---|
| 2/28/2023 | CL | CLAIMS ADMINISTRATION | 0.10 at $300.00/hr | $30.00 |

Receipt and review of correspondence from creditor's new counsel regarding pending hearings and documents regarding same.

22.     See Habitat's response set forth in paragraphs 11, 14, and 16. Creditor and its servicer worked diligently to address Debtor's concerns. There is no basis to assess these fees to Habitat.

| | | | | |
|---|---|---|---|---|
| 3/1/2023 | CL | CLAIMS ADMINISTRATION | 0.50 at $300.00/hr | $150.00 |

Receipt and review and notes on Response to Motion to Compel.

23.     See Habitat's response set forth in paragraphs 11, 14, and 16. Creditor and its servicer worked diligently to address Debtor's concerns. There is no basis to assess these fees to Habitat.

| | | | | |
|---|---|---|---|---|
| 3/1/2023 | CL | CLAIMS ADMINISTRATION | 0.60 at $300.00/hr | $180.00 |

Began preparing for hearing on Motion to Compel; compiled documents in support and drafted initial notes.

24.     See Habitat's response set forth in paragraphs 11, 14, and 16. Creditor and its servicer worked diligently to address Debtor's concerns. There is no basis to assess these fees to Habitat.

| | | | | |
|---|---|---|---|---|
| 3/2/2023 | CL | CLAIMS ADMINISTRATION | 0.40 at $300.00/hr | $120.00 |

Receipt and review of Creditor's Response to Objection to Proof of Claim #4.

25.     Objections and responses thereto regarding claims are routine matters in chapter 13 bankruptcy proceedings. Simply because a party takes an action in a bankruptcy proceeding does not entitle the other party to recover their attorney fees. There is no basis to assess these fees to Habitat.

| | | | | |
|---|---|---|---|---|
| 3/2/2023 | CL | CLAIMS ADMINISTRATION | 0.10 at $300.00/hr | $30.00 |

Drafted correspondence to creditor's counsel regarding hearing on Objection to Claim; notes to file.

26.    See Habitat's response set forth in paragraph 25.  There is no basis to assess these fees to Habitat.

| 3/2/2023 | CL | CLAIMS ADMINISTRATION | 0.10 at $300.00/hr | $30.00 |

Receipt and review of correspondence from creditor's counsel regarding status of his review of creditor's records; notes to client file.

27.    Habitat worked diligently to respond to Debtor's concerns regarding Habitat's Proof of Claim.  There was a bona fide dispute over the amounts due, which is common in chapter 13 bankruptcy proceedings.  See also paragraph 5.  There is no basis to assess these fees to Habitat.

| 3/2/2023 | CL | CLAIMS ADMINISTRATION | 0.10 at $300.00/hr | $30.00 |

Receipt and review of proposed Stipulation and Order to Adjourn Objection to Claim #4 from creditor's counsel; drafted response to same with concurrence.

28.    Debtor and Habitat mutually agreed to adjourn the hearings on the pending Objections given that the parties were working together to address their respective concerns.  This is a routine procedure in a bankruptcy proceeding.  There is no basis to assess these fees to Habitat.

| 3/9/2023 | CL | CLAIMS ADMINISTRATION | 0.20 at $300.00/hr | $60.00 |

Receipt and review of Notice of Payment Change of Claim #3 of mortgage creditor filed by Affiliate Mortgage Services and attached escrow statement.

29.    Debtor's mortgage and the associated escrow account continued in force while the parties worked toward an agreement on the claim.  The mortgage servicer was obligated to adjust the escrow amounts pursuant to law.  This is a routine matter related to case administration.  There is no basis to assess these fees to Habitat.

| 3/9/2023 | CL | CLAIMS ADMINISTRATION | 3.20 at $300.00/hr | $960.00 |

Drafted Response to Creditor's Response to Debtor's Objections to Proof of Claim #4 with Exhibits.

30.    Debtor was under no obligation, under the Federal Rules of Bankruptcy Procedure or otherwise, to file a written response to Habitat's response.  This was unnecessary to the administration of the estate and duplicative.  There was no basis to assess these fees to Habitat.

| 3/9/2023 | CL | CLAIMS ADMINISTRATION | 2.60 at $300.00/hr | $780.00 |

Drafted Response to Creditor's Response to Motion to Compel.

31.    See Habitat's response set forth in paragraph 30.  There is no basis to assess these fees to Habitat.

| 3/20/2023 | CL | CLAIMS ADMINISTRATION | 0.10 at $300.00/hr | $30.00 |

Drafted follow up correspondence to counsel for mortgage servicer; notes to file.

32.    It is unclear what this correspondence relates to. It is common to have correspondence with counsel for the mortgage servicer during a chapter 13 bankruptcy. There is no basis to assess these fees to Habitat.

| 3/20/2023 | CL | CLAIMS ADMINISTRATION | 0.10 at $300.00/hr | $30.00 |

Receipt and review of correspondence from creditor's counsel regarding loan history and explanation.

33.    This information was provided along with a proposed amended proof of claim to address Debtor's concerns about Habitat's claim. Habitat was working diligently to set forth a claim that addressed Debtor's concerns. This is a routine matter related to case administration. There is no basis to assess these fees to Habitat.

| 3/20/2023 | CL | CLAIMS ADMINISTRATION | 0.40 at $300.00/hr | $120.00 |

Receipt and preliminary review of creditor's draft amended Proof of Claim; compared against filed Proof of Claim, Note, OCP and Plan terms, notes regarding same.

34.    See Habitat's response set forth in paragraph 33. There is no basis to assess these fees to Habitat.

| 3/22/2023 | CL | CLAIMS ADMINISTRATION | 0.50 at $300.00/hr | $150.00 |

Telephone conference with creditor's counsel regarding possible resolution of pending hearings; questions and concerns of proposed Amended Proof of Claim; and related issues.

35.    See Habitat's response set forth above. Habitat was working diligently to resolve Debtor's concerns. Debtor sets forth no authority to support the assertion that a bona fide dispute, and potential resolution thereof, requires payments of the other party's attorney fees. There is no basis to assess these fees to Habitat.

| 3/22/2023 | CL | CLAIMS ADMINISTRATION | 0.20 at $300.00/hr | $60.00 |

Receipt and review of correspondence from Trustee's counsel regarding status of hearings; drafted detailed correspondence to Trustee's counsel following conference with creditor's counsel, identifying the status and issues remaining.

36.    See Habitat's response set forth in paragraph 35. There is no basis to assess these fees to Habitat.

12

3/22/2023     CL     CLAIMS ADMINISTRATION          0.60 at $300.00/hr     $180.00
                     Review case file and prepare for hearing on Motion to Compel.

37.     See Habitat's response set forth in paragraphs 11, 14, and 16.  There is no basis to assess these fees to Habitat.


3/23/2023     CL     CLAIMS ADMINISTRATION          1.0 at $300.00/hr      $300.00

                     Travel to and from court for hearing on Motion to Compel and status on Objection to Proof of Claim #4. Actual time: 3.0 hours.

38.     Debtor chose to hire counsel located in Ann Arbor for a case based in Bay City.  Travel time should not be borne by any creditor, including Habitat.

3/23/2023     CL     CLAIMS ADMINISTRATION          1.70 at $300.00/hr     $510.00
                     Attended hearing on Motion to Compel and status on Objection to Proof of Claim #4.

39.     See Habitat's response set forth in paragraphs 11, 14, and 16.  There is no basis to assess these fees to Habitat.

3/23/2023     CL     CLAIMS ADMINISTRATION          0.20 at $300.00/hr     $60.00
                     Notes to client file following hearing on Motion to Compel and Objection to Proof of Claim #4.

40.     See Habitat's response set forth in paragraph [sic] 11, 14, and 16.  Debtor's counsel continued to pursue these matters and is ethically obligated to keep Debtor reasonably informed. There is no basis to assess these fees to Habitat.

4/3/2023      CL     CLAIMS ADMINISTRATION          0.10 at $300.00/hr     $30.00
                     Drafted correspondence to creditor's counsel regarding status of potential resolution.

41.     Habitat was working diligently to resolve Debtor's concerns.  Debtor sets forth no authority to support the assertion that a bona fide dispute, and potential resolution thereof, requires payments of the other party's attorney fees.  There is no basis to assess these fees to Habitat.

4/7/2023      CL     CLAIMS ADMINISTRATION          0.30 at $300.00/hr     $90.00
                     Receipt and review of correspondence from creditor's counsel with interest calculation; review case file; drafted response to counsel regarding same.

42.     Debtor had a sporadic payment history, which was further complicated by previous bankruptcy filings.  There were also waivers of thousands of dollars' worth of fees because of Debtor's choice to participate in the MIHAF program.  The difficulty in calculating the value of

Habitat's claim was directly attributable to Debtor, not Habitat. See also Habitat's response set forth in paragraph 33. Habitat continued to work toward a resolution. There is no basis to assess these fees to Habitat.

| 4/14/2023 | CL | CLAIMS ADMINISTRATION | 0.20 at $300.00/hr | $60.00 |

Review client file; drafted follow up correspondence to creditor's counsel.

43. See Habitat's response set forth in paragraph 42. Habitat continued to work toward a resolution. There is no basis to assess these fees to Habitat.

| 4/20/2023 | CL | CLAIMS ADMINISTRATION | 0.20 at $300.00/hr | $60.00 |

Receipt and review of detailed correspondence from creditor's counsel; notes to client file.

44. See Habitat's response set forth in paragraph 42. Habitat continued to work toward a resolution. There is no basis to assess these fees to Habitat.

| 4/20/2023 | CL | CLAIMS ADMINISTRATION | 0.10 at $300.00/hr | $30.00 |

Receipt and review of correspondence from creditor's counsel regarding attorney fees (4/17); drafted response to same.

45. See Habitat's response set forth in paragraphs 41 and 42. Upon information and belief, this relates to Habitat's offer to settle this matter. There is no basis to assess these fees to Habitat.

| 4/27/2023 | CL | CLAIMS ADMINISTRATION | 0.50 at $300.00/hr | $150.00 |

Attended status conference on Motion to Compel and Proof of Claim.

46. See above. At this point, the issues were largely resolved, but Debtor's attorney sought to push forward with the "Motion to Compel." Habitat worked diligently to resolve Debtor's concerns and to find a resolution that would make Debtor's bankruptcy successful.

Ms. Perez argues that Habitat for Humanity should pay her attorney fees because it violated the automatic stay and that the failure of Habitat for Humanity to file a Proof of Claim and provide accurate information caused her attorney to do extra and unnecessary work. Habitat for Humanity disagrees and also argues that there is no basis for the award of attorney fees under Rule 9011 or any Bankruptcy Code provision.

Statement of Authorities

Violation of Automatic Stay

11 U.S.C. § 362(a) automatically stays all proceedings against the debtor as follows:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of –

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of this case under this title;

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . .

A bankruptcy petition operates as a stay of "any proceeding to recover a claim against the debtor" and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The purpose of the automatic stay is to give the debtor a "breathing spell from his creditors." *In re Banks*, 253 B.R. 25, 29 (Bankr. E.D. Mich. 2000). The legislative history indicates that the stay provides a debtor broad protection from creditors by stopping all collection efforts, all harassment, and all foreclosure actions. *Id*. (citation omitted).

A party violates the automatic stay by taking any action prohibited by Section 362(a) after receiving notice of a bankruptcy filing. *Id*. "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997) (quoting *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987)). To show liability under Section 362(k), the Debtor need only show actual notice of the bankruptcy and an

15

act in violation of the stay. "Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages." *Daniels*, 206 B.R. at 445. The automatic stay requires creditors to take affirmative steps to halt or reverse any pending suits or collection efforts begun prior to bankruptcy, including garnishment, repossession of a vehicle, and foreclosure of a mortgage or lien. *Banks*, 253 B.R. at 30.

An individual debtor can recover damages for willful violation of the stay under Section 362(k), which provides:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

Subsection (k) applies that the stay is terminated "with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2) . . . ."

If the moving party requests actual damages, as well as attorney fees, evidence will need to be offered on such and satisfy the Court on same, i.e., attorney fees would require testimony or a verified affidavit and bill or costs, and actual damages would include amounts paid as a result of the stay violation, incidental costs (lost time from work, travel costs, daycare expenses, etc.). These should be awarded if the Court is satisfied these are indeed actual damages.

Punitive damages may be awarded in the limited context of when the Court is struck by the egregious behavior of the creditor and seeks to deter such conduct in the future, the Court believing

16

a risk for repeat conduct realistically exists. This determination as to punitive damages will depend on the evidence presented at the hearing, bare allegations in the pleadings alone generally being insufficient.

<u>Bankruptcy Rule 9011(b)</u>

(b) **Representations to the Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Under Bankruptcy Rule 9011(c)(1), a motion for sanctions must be made in compliance with the twenty-one day "safe harbor" requirement.

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

17

This safeguard is "an absolute requirement." *Ridder v. City of Springfield, 109* F.3d 288, 296 (6th Cir. 1997) (interpreting identical Fed. R. Civ. P. 11).

The Sixth Circuit Court of Appeals in *Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 419 (6th Cir. 1992) noted the most important goal of Rule 11 is deterrence, citing with approval The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11, authored by the American Judicature Society, Studies of the Justice System ("Task Force Report"):

> In determining an appropriate sanction under amended Rule 11, the court should consider the nature of the violation committed, the circumstances in which it was committed, the circumstances (including the financial state) of the individual to be sanctioned, and those sanctioning measures that would suffice to deter that individual from similar violations in the future. The court should also consider the circumstances of the party or parties who may have been adversely affected by the violation.

*Id*. at 420 (quoting the Task Force Report, at 40). The *Orlett* Court also cautioned that if Rule 11 sanctions are awarded, they should be "'fair, reasonable and bear some relation to the party or attorney's ability to pay and responsibility for the offending litigation.'" *Id*. at 420 (quoting Georgene Vairo, *Rule 11: A Critical Analysis*, 118 F.R.D. 189, 229-30 (1988)). Under this standard, the *Orlett* Court suggested that courts should also "consider, where appropriate, non-monetary sanctioning, such as reprimand, censure, referral to an appropriate disciplinary committee, and the like." *Id*.

Section 105(a)

Bankruptcy courts also have the power to sanction an attorney who unreasonably and vexatiously multiplies the proceedings under the general powers granted in 11 U.S.C. § 105(a). *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997). Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Section 105 grants the courts broad powers to implement Title 11 and prevent abuse of the bankruptcy process. An award of sanctions under section 1927 or under the court's inherent powers is within the court's discretion. *Jones v. The Continental Corp.*, 789 F.2d 1225, 1229 (6th Cir. 1986).

<u>Analysis</u>

I.     Violation of the Automatic Stay

The automatic stay was imposed when the Debtor filed her Chapter 13 Petition on July 28, 2022. Habitat for Humanity stopped its foreclosure action as required by the automatic stay. The Debtor alleges Habitat for Humanity violated the automatic stay by contacting her regarding the MIHAF program. All of the evidence presented to the Court is contrary. Ms. Mora, the only witness, testified that neither she or anyone else from Habitat for Humanity contacted Ms. Perez. She did testify that she mentioned to a friend of Ms. Perez that she risked losing $25,000.00 from MIHAF if she did not respond. That is all she did. The allegations made by Ms. Perez's counsel were not proven at the August 1, 2023 hearing.

On one hand, the Court can see through the arguably veiled defense that Habitat for Humanity did not directly contact Ms. Perez. The Court does not see this as necessary in this case. Here, Ms. Mora assisted Ms. Perez indirectly which prompted her to take the necessary action to obtain the $25,000.00 from MIHAF and receive a forgiveness of $4,300.00 from Habitat for Humanity. In all of this, the Court finds that none of Ms. Mora's or Habitat for Humanity's actions

19

were <u>against</u> the Debtor, her property, or property of the estate, a fundamental requirement of a violation of the automatic stay action. If anything, these actions were for Ms. Perez. Again, while it is true that similar creditor action could be a violation of the automatic stay, the requisite conduct is not present here.

Even if the Court found a violation of the automatic stay, Ms. Perez did not prove any damages. She was not harmed financially nor did she lose any property. She did not prove any physical or emotional damages. All that was proven was that she was able to complete the MIHAF procedures and receive a benefit of payment and forgiveness of her mortgage arrearage.

Accordingly, the Court finds that Habitat for Humanity did not violate the automatic stay. The Court also finds that Ms. Perez was not harmed or damaged by a violation of the automatic stay.

II.     Rule 9011 Sanctions

For sanctions to be awarded under Rule 9011, a pleading or paper must be filed with the Court, which is: presented for an improper purpose; is frivolous; lacks factual support; or contains a denial of facts that is unwarranted.

The only paper filed with this Court by Habitat for Humanity that was not in response to a pleading of Ms. Perez was a Proof of Claim after Ms. Perez filed a claim on behalf of Habitat for Humanity. That Proof of Claim stated Ms. Perez owed $59,702.77 with $27,377.81 in arrears. While not accurate, these amounts are close to the final amounts agreed to by Ms. Perez and Habitat for Humanity - $29,789.00 after receipt of the MIHAF monies and forgiveness of $4,300.00.

Initially, the Court finds that Ms. Perez did not take the requisite steps to fulfill Rule 9011. Ms. Perez did file a Motion to Allow Claim identifying Affiliate Mortgage Services, Inc. as holding a mortgage on Ms. Perez's home and a corresponding Proof of Claim. The Court granted the request to allow the late filed claim on February 7, 2023. On February 20, 2023, Ms. Perez filed the instant Motion directed to Habitat for Humanity and its then current counsel, the first time Habitat for Humanity was mentioned in a pleading. The next day, the Court entered an Order Sustaining the Objection of Ms. Perez to the Proof of Claim that her counsel prepared. On March 1, 2023, Mr. Piper filed a response to the February 20, 2023 Motion and Ms. Perez then filed a Supplemental Motion on March 9, 2023.

The Court could not find any evidence in pleadings filed with the Court or produced on August 1, 2023 that shows Habitat for Humanity was given time to correct a pleading filed by it and then failed to do so. Rule 9011 sanctions are therefore not appropriate.

Moreover, *Orlett* directs this Court to consider sanctions that deter similar violations in the future. Here, sanctions would not be a determent because Mr. Piper acted appropriately. Per *Orlett*, Habitat for Humanity's circumstances as a non-profit organization devoted to helping people stay in their homes weighs heavily in favor of not awarding sanctions because such an award would deprive services to other needy individuals. Also, the $4,300.00 amount forgiven by Habitat for Humanity is close to the amount requested by Ms. Perez.

The Court does, however, see that Ms. Perez had to file a Proof of Claim for Habitat for Humanity and file a Motion to Allow this Claim. On August 1, 2023, Mr. Piper, when pressed by the Court, allowed that the fee of no more than $1,000.00 could be appropriate as compensation for the legal work performed by Ms. Perez's counsel. The services provided on January 11, 2023,

January 12, 2023, and February 7, 2023 total $720.00 and should be awarded to Ms. Perez and against Habitat for Humanity as an appropriate means to enforce the administration of this case and prevent an abuse of process under Section 105(a). The remaining services, however, are not attributable to Habitat for Humanity. Ms. Perez directed her request for relief to Habitat for Humanity and it responded accordingly. Ms. Perez did not provide evidence on her behalf at the August 1, 2023 hearing and has not met her burden of proof on many of her allegations. Except for the award of $720.00, which the Court bases as much on Section 105(a) as it does on Rule 9011, the relief requested by Ms. Perez is already granted, was not proven, or is not warranted.

The Court also steps back to look at this case at a higher level and notes that Ms. Perez has a confirmed Chapter 13 Plan, has her obligations to Habitat for Humanity properly set, and now has the peace of mind that she only has an obligation to the Chapter 13 Trustee that is paid directly from her paycheck. The Trustee pointed out that an award of attorney fees could render her Plan unfeasible. That may be true, but that possibility applies to every Chapter 13 case. In this case, however, Ms. Perez could, if she wanted or needed, extend the term of her Plan. Also, were this Court to ignore the significant forgiveness of debt by Habitat for Humanity and instead require Ms. Perez to pay the arrearage but allow sanctions against Habitat for Humanity, Ms. Perez would not be in a significantly better financial position.

<u>Conclusion</u>

The Court awards $720.00 of attorney fees in favor of Ms. Perez and against Habitat for Humanity. The remaining attorney fees of $6,839.78 and costs of $3.67 are awarded to Marrs & Terry and are to be paid by the Chapter 13 Trustee.

The Court will enter an order consistent with this Opinion.

**Not for Publication**

**Signed on August 23, 2023**



/s/ **Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**